[Cite as *State ex rel. Souare v. Ravenna Police Dept.*, 2026-Ohio-2981.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO ex rel.
ELHADJ ALPHA MAHMOUD
SOUARE,

      Relator,

      - vs -

RAVENNA POLICE DEPARTMENT,

      Respondent.

CASE NO. 2025-P-0092


Original Action for
Writ of Mandamus

---

## PER CURIAM OPINION AND JUDGMENT ENTRY

Decided: August 3, 2026
Judgment: Petition denied

---

*Elhadj Alpha Mahmoud Souare*, pro se, P.O. Box 7024, Akron, OH 44306 (Relator).

*Frank J. Cimino*, City of Ravenna Law Director, 250 South Chestnut Street, Suite 18, Ravenna, OH 44266 (For Respondent).


PER CURIAM.

{¶1} On December 17, 2025, relator, Elhadj Alpha Mahmoud Souare, filed a petition for writ of mandamus against respondent, Ravenna Police Department ("RPD"). Relator sought "MDT and terminal logs"; "LEADS/NCIC audit histories"; "CAD and dispatch entries"; "emails, messages, and tasking records"; and "metadata showing timestamps and operator IDs."

{¶2} Later, on March 6, 2026, relator reiterated his original arguments in his petition and sought additional alleged public records in respondent's purported

possession relating to "vehicle flagging"; "any copy of a warrant maintained by law enforcement"; "LEADS or NCIC warrant hits or confirmations"; "MDT or dispatch notifications"; "emails, messages, or taskings referencing the warrant"; "[a]ll records reflecting the designation of vehicle JDB 4772 as 'UNDER SEARCH' or similar, including the initiating agency, date, time, reason, and supervisory authorization"; "[a]ll inter-agency communications between Respondent and Silver Lake Police Department, Akron Police Department, or any Cuyahoga County law-enforcement agency relating to . . . the alleged rape investigation; the vehicle alert; any request to locate, monitor, or stop the vehicle"; and "[a]ll MDT, LEADS NCIC, CAD, dispatch, and audit-trail logs, including associated metadata, terminal IDs, operator IDs, and timestamps." To the extent respondent failed to lawfully comply with the requests, relator seeks statutory damages pursuant to R.C. 149.43(C)(3) as well as court costs and attorney fees.

## I. Facts and Procedural Sequence

{¶3}  In his December 17, 2025 petition and his following March 6, 2026 supplemental filing, relator asserted that, on December 8, 2025, at approximately 6:30 a.m., he was stopped by officers of the Silver Lake Police Department, who advised that his vehicle had been designated "under search."[1]

{¶4}  Relator claimed he was informed that no warrant was in effect at the time but that RPD had advised or directed that relator be detained until the Stow Municipal Court opened in order for law enforcement to obtain a warrant. Relator asserted he was

---

1. Relator's public records request, attached to his December 17, 2025 petition, states that his vehicle's license plate number is "JDB 4772." Later, relator concedes Silver Lake Police Department conducted surveillance on and produced records referencing "business van JDB4772," but Silver Lake also referenced a vehicle with the license plate number "'IDB 4772 – UNDER SEARCH[.]'" (Emphasis in original.) Relator additionally pointed out that a Silver Lake police officer searched the LEADs database at 5:40 a.m. on December 8, 2025, for a vehicle with the license plate number "JDB4772." It would reasonably appear, therefore, that relator's license plate number at issue is JDB 4772.

Case No. 2025-P-0092

not free to leave and was detained for more than three hours awaiting law enforcement to obtain a warrant and authorization to procure DNA swabs.

{¶5} During the detention, relator asserted he was advised that the "under search" designation and the effort to obtain a warrant were based on an alleged rape investigation. Relator asserts he had no prior notice of a charge or possible warrant. Relator claims that the representations made to him necessarily required the creation of law-enforcement records, including but not limited to communications between RPD and Silver Lake Police Department and requests to obtain a warrant, among other documents or records.

{¶6} After the incident, relator asserted he contacted Stow Municipal Court seeking information or a copy of any warrant. Relator claimed the court advised him that it could not provide the documentation and he should contact RPD to obtain the records. On December 11, 2025, relator filed a written public records request to respondent seeking the previously noted alleged public records. Significantly, on December 24, 2025, relator was indicted, via secret indictment, by the Portage County Grand Jury on one count of rape, in violation of R.C. 2907.02, a felony of the first degree.[2] A warrant on the indictment was issued on January 12, 2026, and relator was arraigned on the same date. *See* fn. 2.

{¶7} On January 9, 2026, respondent filed a motion to dismiss the petition. Respondent asserted this court lacked jurisdiction over the subject matter and personal

---

2. Although neither party in any of their filings specifically mentions the indictment, the Portage County Clerk of Court's docket reflects this information. The Supreme Court of Ohio has observed that a court may take judicial notice of a docket that is publicly available. *State ex rel. Everhart v. McIntosh*, 2007-Ohio-4798, ¶ 10; *see also Lundeen v. Turner*, 2020-Ohio-274, ¶ 4, fn. 1 (8th Dist.), (noting that a court may take judicial notice of a public docket available on the internet. *Id.*, citing *Everhart*.).

Case No. 2025-P-0092

jurisdiction over RPD. Additionally, respondent argued insufficiency of process, insufficiency of service of process, and failure to state a claim upon which relief might be granted.

{¶8}    Respondent maintained relator attempted to forward a records' request to the RPD, which respondent attached to its motion. Respondent appeared to acknowledge it somehow received the email but asserted neither the email nor the request was received by the RPD. Respondent noted that the emails used by relator were not sent to an extant Domain Name System. Attached to the motion, respondent provided the affidavit of Ronald Fields, Administrative Assistant of the RPD.

{¶9}    Mr. Fields averred that relator's email requesting the alleged public record did not match the required email for obtaining public records. Mr. Fields noted relator requested the records from rpdrecords@ravennapolice.com. However, Mr. Fields stated that the proper channel for making such requests is rpdinfo@ravenna.gov. As such, Mr. Fields asserted the request was not channeled to the appropriate extension of the RPD.

{¶10}   Mr. Fields further stated that relator called the RPD records department on January 5, 2026, to ask "why he was pulled over/arrested/stopped in Silver Lake." At no point did relator request information about his pending public records request. Mr. Fields averred that even though relator did not bring the topic to his attention during the conversation, Mr. Fields advised relator to come to the police station and speak with a supervisor regarding his concerns. According to Mr. Fields, relator indicated he would visit the station "in the next couple of days." However, according to Mr. Fields, relator did not attempt to meet with RPD.

{¶11}  Mr. Fields further averred he attempted to contact relator through the email address he originally provided in the request for records. Mr. Fields asserted he was able to obtain the email address purportedly used by relator via a search of the "Court Docket in this matter. . . ." Despite his attempt, Mr. Fields averred "that within 30 seconds, he received notice from Outlook that the email message was undeliverable, and further that the domain does not exist."

{¶12}  Mr. Fields also averred that if relator's request was valid, "the case is currently under investigation and [the requested records are] not releasable under the [confidential law enforcement investigatory record ("CLEIR")] exemption, ORC 149.43(A)(2)." [3]

{¶13}  On January 23, 2026, relator filed a memorandum in opposition to respondent's motion to dismiss. In this filing, relator asserted that public records' requests do not require formal service of process. And, regardless, relator maintains respondent's exhibits demonstrate either actual or constructive receipt of the requests. Relator consequently maintains, because this court possesses original jurisdiction, respondent received the request, *and* since it has not complied, its motion to dismiss should be overruled.

{¶14}  On March 6, 2026, relator filed a "Supplemental Brief in Support of Petition for Writ of Mandamus." In the filing, relator asserted that the "Village of Silver Lake Police Department" conducted an "UNLAWFUL DATA BASE SEARCH" of his "business vehicle

---

3. We acknowledge that Mr. Fields' affidavit (in respondent's motion to dismiss) stated that he attempted, but was unable, to reach relator via the email address relator sent his request. This point militates in favor of respondent's due diligence to "reach out" to relator in relation to his request. Nevertheless, it does not illustrate that respondent's attempt to contact relator was effectuated in an attempt to send the alleged public records at the base of this mandamus action.

Case No. 2025-P-0092

at 5:40 a.m. on December 8, 2025[.]" (Emphasis in original.) On February 27, 2026, relator claimed that the "director of law for the Village of Silver Lake" sent him a letter admitting surveillance. According to relator, the letter provided:

> In Summit County Case No. 2025-12-5967, the Silver Lake Police Department is named as a Respondent in your Petition for Writ of Mandamus. In filings before the court, you included two Outlook e-mail attachments dated December 11, 2025, at two different times . . .
>
> Please understand that these email requests were NEVER received by the Silver Lake Police Department or the Village. . . . However, to resolve the litigation you filed against the Silver Lake Police Department and not burden [the] Common Pleas Court, I am voluntarily producing the attached records.

{¶15} The missive proceeded to list the various records the Village of Silver Lake Police Department apparently produced, including a document which designated "computer queries, including lookup labeled 'IDB 4772 – UNDER SEARCH.'"

{¶16} Relator maintained the communication provides "EXPLOSIVE EVIDENCE of unlawful surveillance" of his business vehicle. (Emphasis in original.) He noted that various records from Silver Lake Police Department corroborated the alleged unlawful surveillance. Relator claimed that the Silver Lake Police Department's admissions established that RPD possessed the records he had been allegedly denied. He specifically asserted that RPD "must have," inter alia, records relating to investigation "#4772 / IDB 4772[.]" Because of this, he additionally claimed RPD possessed the various documents requested in the underlying petition. *See* fn. 1, pertaining to the vehicle's ostensibly correct license plate number.

{¶17} Respondent did not file a responsive brief to relator's allegations.

{¶18} In this court's May 11, 2026 judgment entry, this court concluded that RPD received relator's request. R.C. 149.43(B)(1) states that "[u]pon request by any person, a public office *or* person responsible for public records shall make copies of the requested public record available to the requester . . . ." (Emphasis added.) The "use of the word 'or,' a disjunctive term, signifies the presence of alternatives." *In re Estate of Centorbi*, 2011-Ohio-2267, ¶ 18.

{¶19} This court determined the statute speaks in terms of two entities that must respond to a public-records request: the public office itself or a person responsible for public records. *See* R.C. 149.43(B)(1). Based on the statutory language, when an employee of a public office or any person responsible for the public office's public records receives the public-records request, a duty arises for either the public office or a person responsible for public records to respond to it. *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 25 ("R.C. 149.43 imposes on public offices and records custodians a corresponding clear legal duty to make a requested public record available for inspection or copying unless it falls squarely within a specific statutory exemption." *See also State ex rel. Berry v. Booth*, 2024-Ohio-5774, ¶ 51 (Kennedy, C.J., concurring in part and dissenting in part) (emphasizing the "joint duty" of either the public office or person responsible for public records compilations to respond to a request under R.C. 149.43).

{¶20} This court concluded that the RPD, at some point, received relator's request for records. As a result, respondent had either actual or constructive notice of the request for production. "R.C. 149.43 must be construed liberally in favor of broad access to records kept by public offices, and any doubt is to be resolved in favor of disclosure of the

Case No. 2025-P-0092

records." (Citations omitted.) *State ex rel. Wallace v. State Med. Bd. of Ohio*, 2000-Ohio-213, ¶ 16. Accordingly, this court determined respondent's argument that relator's alleged failure to send the request to the proper email address was unavailing. This court observed that respondent clearly received the request, evidenced by its representations in its motion to dismiss. This court emphasized that a court *must* construe requests liberally in favor of the requestor; as such, this court determined the underlying request was sufficient to trigger jurisdiction over the "person" of respondent and that this court had subject matter jurisdiction over the underlying filing—an original action in mandamus.

{¶21} This court accordingly determined that respondent's jurisdictional arguments and notice arguments were without merit.

{¶22} This court also addressed respondent's claim that the request was exempted under the CLEIR exception to public records requests. Respondent, in its motion to dismiss, averred, by way of Mr. Fields' affidavit, that if relator's request was valid "the case is currently under investigation and [the requested records are] not releasable under the CLEIR exemption, ORC 149.43(A)(2)."

{¶23} R.C. 149.43(A)(2), the CLEIR exception to record disclosures provides:

> "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
> (i) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;
>
> (ii) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which

Case No. 2025-P-0092

information would reasonably tend to disclose the source's or witness's identity;

(iii) Specific confidential investigatory techniques or procedures or specific investigatory work product;

(iv) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

{¶24} This court noted that respondent simply asserted that "the case is currently under investigation." Accordingly, it was unclear which subsection(s) of R.C. 149.43(A)(2) would arguably apply to this matter.

{¶25} "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish" that "the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus. When records are withheld on the basis of a statutory exemption, "the 'burden of production' is on the public office or records custodian to plead and prove facts clearly establishing the applicability of the exemption." *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 27.

{¶26} In denying respondent's motion to dismiss, this court observed:

In this case, respondent does not provide any particularized evidence in support of the conclusory statement made in Mr. Fields' affidavit. Respondent simply asserts "the case is currently under investigation." Therefore, respondent has not met its burden of establishing that the requested investigation reports fall squarely within the exception for confidential law-enforcement investigatory records. *State ex rel. Howard v. Shuler*, 2025-Ohio-4964, ¶ 31 (Respondent asserted that the requested investigation reports "'if released to [Howard], would contain information that would endanger the life or physical safety of a confidential informant.' However, [respondent] did not submit any evidence in support of this assertion. Additionally, it is not readily apparent from the records request itself that the requested reports would contain

a statement from or reveal information about a confidential informant.") *See also Jones-Kelley*, 2008-Ohio-1770, at paragraph two of the syllabus.

May 11, 2026 judgment entry denying motion to dismiss, p. 8.

{¶27} This court therefore determined that because relator had sufficiently established subject-matter jurisdiction, personal jurisdiction, as well as notice *and* respondent failed to meet its burden of production on the applicability of the CLEIR exception, dismissal of the action would be inappropriate.

{¶28} This court accordingly ordered the parties to file mutual motions for summary judgment and memoranda in opposition to the same. On May 14, 2026, relator filed a motion for summary judgment. On May 26, 2026, respondent filed a memorandum in opposition to relator's motion. Subsequently on June 1, 2026, relator filed a "final revised reply in support of motion for summary judgment" along with a motion for sanctions, pursuant to R.C. 2323.51 and Civ.R. 11, as well as a motion for referral to the disciplinary counsel. On the same date, respondent filed its reciprocal motion for summary judgment. This court now addresses the merits of relator's petition considering the dispositive motions as well as the responses and all appended documentary evidence.

## II. Relative Arguments of the Parties For and Against Summary Judgment

{¶29} In his motion for summary judgment, relator emphasizes the specific conclusions of this court's denial of respondent's motion to dismiss. In particular, relator highlights this court's conclusion that respondent's initial claim for exemption of any records under the CLEIR exception, given the allegations in respondent's motion to dismiss, did not apply. Relator also underscores that "the Silver Lake Police Department's

Case No. 2025-P-0092

voluntary production of records from the same December 8, 2025 incident – including MDT logs and the 'IDB 4772 [or JDB 4772] – UNDERSEARCH' designation – strongly indicates that the underlying records exist and that RPD, as a participating agency in the inter-agency operation, likely possess corresponding responsive records."[4] Relator points out that "RPD's failure even to acknowledge or deny possession, combined with Silver Lake's productions, strips any credibility from RPD's bare investigatory-exemption claim."

{¶30} In its memorandum in opposition, respondent reiterates similar arguments raised in its motion to dismiss. Namely, that relator's original request was transmitted to an invalid or non-existent email address and therefore respondent never properly received the request. Regardless of this point, respondent *did* assert and averred in its memorandum that it conducted a "good-faith search for responsive records." Respondent maintains that it was essentially unable to obtain various records. To the extent certain records were not found, were unavailable, or do not exist, respondent underscores it has no duty to produce or create such records.

{¶31} Respondent subsequently filed its motion for summary judgment. Even though the argument was previously found unpersuasive by this court in denying respondent's motion to dismiss, respondent *again* reiterates that relator did not contact "any valid or active domain utilized by Ravenna Police Department or any affiliated governmental entity." Nevertheless, respondent acknowledges it received service of the

---

4. It is important to note that Silver Lake Police Department's "production" of the documentation occurred on February 27, 2026**.** Because, by relator's concession, Silver Lake stopped him on December 8, 2025, based upon respondent's designation of his vehicle as "under search," and an alleged warrant was issued at respondent's direction, Silver Lake was arguably not directly participating in the alleged rape investigation. We point this out only to emphasize that simply because Silver Lake Police Department disclosed its records does not imply respondent was in a coequal position to do so at the time. This is especially worth emphasis considering an indictment was issued in Portage County only seven days after the underlying petition was filed.

Case No. 2025-P-0092

petition at issue; however, respondent asserts relator, in a subsequent pleading (the March 6, 2026 supplemental petition) sought "additional categories or records and information" not included in the original request. Mr. Fields, via affidavit attached to respondent's motion, averred that these new materials were not part of the original request issued by relator. Respondent argues that, to the extent relator expanded the scope of his original petition, any additional, possible records are outside the scope of this litigation. Thus, respondent maintains, those requests cannot be considered as a basis for relief in mandamus.

{¶32} Respondent also attached the affidavit of Assistant Prosecutor Sean Scahill to its motion. Mr. Scahill's affidavit asserted that discovery materials related to relator's pending criminal matter, including materials referenced by relator in its records requested in both the original public-records request and the additional items in the petition were provided. This is the first time relator's indictment was addressed or even broached.

{¶33} Pursuant to the pending charge, Mr. Scahill averred that discovery had been provided on February 9, 2026, approximately 30 days prior to relator's March 6, 2026 supplement to his petition, and approximately six weeks after relator was indicted.

{¶34} Despite respondent's redundant arguments relating to the alleged invalidity of the initial request, respondent maintains that either some of the requested records do not exist *or*, if they do, they were provided in discovery. Regarding the first point, respondent maintains it conducted reasonable and good-faith searches for all categories of records requested and many either do not exist or are not maintained. With respect to the second point, respondent, via Mr. Scahill's affidavit, underscores that full discovery

Case No. 2025-P-0092

was provided to relator's original attorney on behalf of relator. In this regard, the request is moot.

{¶35} In response, relator asserts that respondent's motion is internally inconsistent; that is, the records requested cannot both exist and not exist. Moreover, he asserts that respondent, via its affidavits, concedes it possessed the documents at issue when it was put on notice of the petition for writ of mandamus. As such, respondent had actual notice of the request, failed to provide the records, and, as a result, he is entitled to the writ as well as statutory damages for respondent's withholding of the documents at issue (particularly when various documents were arguably or allegedly provided in discovery).

## III. Legal Standards

{¶36} Mandamus is an extraordinary remedy "to be issued with great caution and discretion and only when the way is clear." *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977), citing *State ex rel. Kriss v. Richards*, 102 Ohio St. 455 (1921), and *State ex rel. Skinner Engine Co. v. Kouri*, 136 Ohio St. 343 (1940). A party petitioning for a writ of mandamus must establish (1) "a clear legal right to the requested relief," (2) "a clear legal duty on the part of the [respondent] to provide it," and (3) "the lack of an adequate remedy in the ordinary course of law." (Citation omitted.) *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 6. The relator must prove entitlement to the writ by clear and convincing evidence. *State ex rel. Cleveland Right to Life v. State Controlling Bd.*, 2013-Ohio-5632, ¶ 2.

{¶37} With this standard in mind, both parties filed motions for summary judgment. "To prevail on a motion for summary judgment, the moving party has the initial burden to

Case No. 2025-P-0092

affirmatively demonstrate that: (1) there is no genuine issue of material fact to be resolved in the case; (2) final judgment as a matter of law is warranted; and (3) the nature of the evidentiary materials, even when viewed in a light most favorable to the non-moving party, are such that a reasonable person could only reach a conclusion against the non-moving party." (Citation omitted.) *State ex rel. Andrews v. Chardon Police Dept.,* 2013-Ohio-338, ¶ 5 (11th Dist.).

## IV. Discussion and Analysis

{¶38} This court begins by emphasizing the basic analytical, problem-solving principle of "Occam's Razor," also known as the logical rule of parsimony. The theory posits that where all premises are understood or possibly agreed upon, the simplest answer is the best answer. *See, e.g., Swann v. Olivier*, 22 Cal. App. 4th 1324, 1329 (1994) (disapproved on other grounds) (Occam's Razor is the principle "that the simplest of competing theories should be preferred over more complex . . . – [It] is as valid juridically as it is scientifically."). As such, the principle is a sound and salutary axiom useful in any discursive forum, whether legal, scientific, or otherwise. A court must engage with all manner of pleadings and filings in the course of resolving a case in controversy. While respondent is still steadfast in its viewpoint that relator failed to properly serve it, respondent's motion for summary judgment, with its attachments, offers a simple, substantive solution to this matter. For two independent reasons, discussed in turn, we conclude relator's petition must be denied.

Case No. 2025-P-0092

## A. Unavailability of Information with No Rebuttal

{¶39} We initially point out respondent asserts and avers that many of the requests made by relator "did not exist for the requested date of December 8, 2025." Specifically:

> "a. LEADS or NCIC warrant hits or confirmations; b. MDT or dispatch notifications; c. Emails, messages, or taskings referencing the warrant; d. All records reflecting the designation of vehicle JDB 4773 as 'UNDER SEARCH' or similar, including the initiating agency, date, time, reason, and supervisory authorization; e. All interagency communications between Respondent and Silver Lake Police Department, Akron Police Department, or any Cuyahoga County law-enforcement agency relating to . . . the alleged rape investigation; the vehicle alert; any request to locate, monitor, or stop the vehicle; and, f. All MDT, LEADS[,] NCIC, CAD dispatch, and audit-trail logs, including associated metadata, terminal IDs, operator IDs, and timestamps."[5]

{¶40} "When a public office attests that it does not have responsive records, the relator in a public-records mandamus case bears the burden of proving by clear and convincing evidence that the requested records exist and are maintained by the public office." (Citations omitted.) *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 13. A "public office does not have a clear legal duty to furnish records that are not in its possession or control. . . ." (Citation omitted.) *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 11.

{¶41} Further, "[a] public office is under no duty to create new documents to satisfy a public-records request." (Citation omitted.) *State ex rel. McDougald v. Greene*,

---

5. Although the Fields' affidavit states that the vehicle's license plate number is "JDB 4773," we perceive this as a typo. Relator consistently refers to his license plate as JDB 4772 and, even though the Silver Lake Police Department referenced "IDB 4772 – UNDER SEARCH," the same department indicated it conducted a "[d]atabase search of business van JDB4772. . . [.]"

Case No. 2025-P-0092

2020-Ohio-5100, ¶ 10. "It necessarily follows that when a requester seeks a nonexistent record, a public office has no duty to provide it." *Id.*

{¶42} Relator has failed to establish, by any evidential metric, that respondent maintained the records it averred it did not possess. Moreover, relator fails to assert, let alone establish by clear and convincing evidence, that the records at issue are generally kept in the ordinary course of a police investigation such that they would be otherwise subject to and available for a public-records request.

{¶43} Even though relator asserts that Silver Lake produced the information he allegedly requested, respondent was the direct investigative agency. The availability of information from the former does not imply all the information sought from the latter exists.

{¶44} That said, in his June 9, 2026 memorandum in opposition to respondent's motion for summary judgment, relator claims that Mr. Fields' and Mr. Scahill's affidavits are mutually inconsistent. Specifically, relator asserts that Mr. Scahill's affidavit avers that, after relator was indicted on December 24, 2025, discovery was provided, but Mr. Fields' affidavit avers various items are not available. This is not an inherent inconsistency.

{¶45} Mr. Fields' affidavit indicated that various documents are not available while Mr. Scahill stated discovery of all documents relevant to the prosecution were provided in discovery in the underlying criminal case. Both averments can be mutually reconciled with one another and are not, in any reasonable way, inconsistent.

{¶46} In sum, relator has failed to establish, by clear and convincing evidence, that the records identified by Mr. Fields in his affidavit exist or would tend to be available in a public-records request such that respondent should have produced the same. In this respect, relator's petition must be denied.

## B. Criminal Discovery

{¶47} As a supplement to the foregoing conclusion, we emphasize that, via Mr. Scahill's affidavit, criminal discovery has been provided. As highlighted, relator was stopped on December 8, 2025. Relator's petition was filed on December 17, 2025. The indictment was issued on December 24, 2025. On March 6, 2026, relator filed a "supplemental brief." The "supplement," however, does not necessarily expand the original public-records request or add matters not included in the original, more open-ended request. It simply hones the request, i.e., the later filing appears to track the initially requested items but adds more detail to the original request. Because the "supplement" reads like an amended petition, insofar as it requests more detailed information that was generally sought, but not specifically detailed in the original petition, we shall treat it as such.

{¶48} Respondent, in its reply, argued that the additional documents were not included in the original request and thus cannot be part of this action. Respondent, however, never objected to the open-ended nature or breadth of the original request. As such, we shall consider the March 6, 2026 pleading as a more specified version of the original petition going forward.

{¶49} In the "supplement," relator reiterated his requests and sought additional, more detailed information relating to the December 8, 2025, stop of his vehicle. Crim.R. 16(H) provides, in relevant part: "A public records request made by the defendant[, in a criminal case], directly or indirectly, shall be treated as a demand for discovery in a criminal case if, and only if, the request is made to an agency involved in the prosecution or investigation of that case." This rule implies that a public-records request is not a proper

substitute for criminal discovery afforded under Crim.R. 16. *State v. Athon*, 2013-Ohio-1956, paragraph one of the syllabus (stating that the Public Records Act is an independent basis for obtaining information that "does not supersede the requirements of criminal discovery").

{¶50} Given the way this case was pleaded, it is clear that respondent is and/or was an agency "involved in the . . . investigation of [the] case." Even though the public-records request at the heart of this case was filed 13 days before the indictment was issued, relator's March 6, 2026 supplemental pleading in support of its petition, which provided a more detailed request falls squarely within the purview of Crim.R. 16(H).

{¶51} This court has observed that "[w]hile neither R.C. 149.43 nor Crim.R. 16 precludes an accused from obtaining public records from law enforcement agencies, Crim.R. 16 is specific to the procedure in criminal cases and is the preferred method for a defendant to obtain discovery." *Lusane v. Heverly*, 2015-Ohio-714, ¶ 10 (11th Dist.), citing *Athon* at ¶ 18; *see also State ex rel. Henderson v. Washington Court House*, 2026-Ohio-110, ¶ 24 ("Crim.R. 16(H) considers a public-records request made by a criminal defendant to 'an agency involved in the prosecution or investigation of [a criminal] case' to be a demand for discovery in that case . . . .").

{¶52} Relator did not file a subsequent, post-indictment request for public records. Relator did file, however, the March 6, 2026 supplemental pleading. Because we construe the March 6, 2026 filing as an amended petition requesting information or documents that fell under the general rubric of the *original request*, any redundant/post-indictment request would be embraced by the rules of criminal procedure governing discovery. For this additional reason, relator's petition is also denied.

Case No. 2025-P-0092

## C. Damages

{¶53} Ohio's Public Records Act, R.C. 149.43, mandates a custodian of public records to make those records available which are not subject to an exception to any person upon request. R.C. 149.43(B)(1). As this case demonstrates, if a records custodian allegedly fails in his or her duty, the requester may petition a court for a writ of mandamus to enforce his or her legal right to the records. *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11; R.C. 149.43(C)(1)(b). If the records custodian provides the records after the petition is filed, the requester's mandamus claim becomes moot. *State ex rel. Martin v. Greene*, 2019-Ohio-1827, ¶ 7. However, claims for statutory damages, attorney fees, and court costs might remain. *State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 7. The records, to the extent they are available and not subject to exception, must be produced within a reasonable time. R.C. 149.43(B)(1).

{¶54} Respondent averred via affidavits that many of the records were unavailable and/or the Portage County Prosecutor's Office attested that all relevant information pertaining to the records' request was provided in discovery. Relator was indicted on December 24, 2025. Although the underlying petition was filed on December 17, 2025, relator filed a significantly more detailed supplement to his petition on March 6, 2026. A warrant on the indictment was issued on January 12, 2026, and relator was arraigned on the same date. Mr. Scahill, the assistant prosecuting attorney in the underlying criminal matter, averred that discovery was provided on February 9, 2026. The March 6, 2026 filing, submitted approximately a month after discovery, functioned as a demand for supplemental discovery.

{¶55} Although relator filed his public-records request on December 11, 2025, he waited only six days to file his petition for writ of mandamus. Respondent duly filed a motion to dismiss on procedural grounds. Although this court denied the same and further dispositive motion practice was ordered, this does not imply, in any way, that respondent acted in bad faith by not "immediately" responding to relator's request. Indeed, as discussed under subsection IV.A, respondent averred that many of the documents either do not exist or were simply unavailable. We hold, therefore, relator is not entitled to statutory damages.

## V. Conclusion

{¶56} Because relator is unable to establish, by clear and convincing evidence, that much of the information and/or documentation exists or was kept by respondent, we deny his petition. And, as an adjunct or supplemental conclusion, we deem any additional or redundant information sought via the March 6, 2026 filing must be construed as a demand for discovery because it occurred after relator's indictment was filed. In this regard, such information is subject to the rules governing criminal discovery and not proper for a petition in mandamus. Finally, we conclude that, considering the facts and circumstances of this matter, in conjunction with the proceedings in the underlying criminal matter, relator is not entitled to statutory damages. Also, we discern no frivolous, malicious, harassing, or egregious acts or omissions on behalf of respondent. *See State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4915, ¶ 15; *see also* R.C. 2323.52. With this point in mind and because we conclude the underlying petition is without merit and relator is not entitled to statutory damages, we additionally hold that sanctions against respondent are not warranted. For these reasons, we further decline to refer this matter

Case No. 2025-P-0092

to disciplinary counsel. Accordingly, because there is no genuine issue of material fact that remains to be litigated, we hold respondent is entitled to judgment as a matter of law.

{¶57} For the reasons discussed in this opinion, relator's petition for writ of mandamus is denied.

MATT LYNCH, P.J., JOHN J. EKLUND, J., EUGENE A. LUCCI, J., concur.

Case No. 2025-P-0092

# JUDGMENT ENTRY

For the reasons stated in the Per Curiam Opinion of this court, respondent's motion for summary judgment is granted. Relator's motion for summary judgment is overruled, and his petition for writ of mandamus is denied.

Any pending motions are hereby overruled as moot.

Costs to be taxed against relator.

_____
PRESIDING JUDGE MATT LYNCH,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---